Good morning. We have one case this morning. We had a bunch of other cases and they all got pushed back to February 21st. The case that we have is number 15-3873. Bearer, the Attorney General, Mr. Yellen and Mr. Simpson. Whenever you're ready. Your Honors, may it please the Court. My name is Michael Yellen of Cole Shots, representing the appellant, James Bearer. Your Honor, it's this time we request... You're doing this case pro bono, is that right? I am, Your Honor. Thank you very much for your service. Certainly, Your Honor. And also to you as well. Much appreciated. Your Honors, may we reserve two minutes for rebuttal? You certainly may. Your Honors, the District Court in this case improperly dismissed Mr. Bearer's complaint seeking to enforce his rights under the Freedom of Information Act. At issue on this appeal are Mr. Bearer's FOIA requests to the DOJ Criminal Division and to the FBI. And respectfully, the District Court erred in disposing of each of Mr. Bearer's challenges. Mr. Bearer provided additional information to several of the entities that he requested information from, including the FBI, in order to narrow the scope of his request. Why didn't he do that with the Criminal Division? Your Honor, Mr. Bearer's request to the Criminal Division was sufficiently specific for the Criminal Division to carry out a search. There was no other information for Mr. Bearer to provide. That was just his name, wasn't it? It was for documents containing his name, Your Honor. And so the review by the Criminal Division was a straightforward one. If a document had Mr. Bearer's name, it was responsive. Is there anything other than the name social? Mr. Bearer also provided his social security number and birth date as a supplement to the request. But the request itself said any document containing the name. It also provided two aliases. So how does it compare to the Shapiro request? It's very similar to the Shapiro request out of the District of D.C., Your Honor. In that case, the request saw all documents mentioning or referring to Nelson Mandela. There, the District Court properly denied the motion to dismiss because it said the review is a straightforward one. There's no guesswork involved. That's applying the Yeager standard, Your Honor, which this court in Stuler, I believe Judge Fuentes was on that panel, adopted as the standard for this court. And so in the Shapiro case, Your Honor, the court said the review is a straightforward one. All the agency has to do is determine does the document have Mr. Mandela's name or not. That's just like this case, Your Honor. Here, all the reviewing agency the Criminal Division had to do was determine whether or not the document contained Mr. Bearer's name. Once the Hardy Declaration was filed, did Mr. Bearer attempt to challenge it in the District Court? The Hardy Declaration was filed with respect to the FBI request, Your Honor. And the District Court, once the Hardy Declaration was filed, dismissed Mr. Bearer's challenge, saying that the challenge had been rendered moot, notwithstanding that there were still issues remaining as to the sufficiency of the Bolton Index, the Hardy Declaration. And so the District Court also erred with respect to its dismissal of the FBI request, Your Honor, because even if a production is made and the complaint only challenges the production, the District Court still has jurisdiction and should not have dismissed a case where supplemental issues concerning the production remain. Did he perfect that argument? The request for a more specific Vaughan Index was made below, Your Honor. He asked for additional information about the redactions. It may not have been in the purest of form, but as a pro se indigent litigant, Your Honor, his request should be construed liberally to have requested more information to allow him to interpret the Vaughan Index. And that's important. So are you asking us to remand it for further consideration of the Vaughan Index, or do we dispose of it? Yes, Your Honor. Remand the portion of our challenge to the FBI request. In that case, while we certainly argue that the Vaughan Index was insufficient, that's really for the District Court to have determined. The real error here by the District Court was in dismissing the case without even analyzing the Vaughan Index. There's no analysis of that index before this Court. And so as to that request, Your Honors, we would say that there should be a remand to the District Court with a direction to review the sufficiency of the Vaughan Index. Regarding the FBI, the FBI still had not completed its search. I'm sorry? The FBI. Is there further information that the FBI indicated it might provide? The FBI provided only the two Horty Declarations, Your Honor, and argues that the supplemental Horty Declaration is sufficient as a Vaughan Index. We contend that the Horty Declaration does not have enough connective tissue, that it does not sufficiently identify facts from which Mr. Beer could understand why the exemption is relevant. For example, among the descriptions in the Horty Declaration, they assert that some of the documents are withheld because of privacy implications. Exemption B6 and B7C. Mr. Horty's explanation of those withholdings is that the information was withheld because the FBI determined that privacy interests outweighed public interest in disclosure. What do you do with the regulation which states that the requester should provide information to assist in identifying the requested records like date, title, name, author, recipient, subject matter of the record, case number, et cetera, file designation? How do you address that part of the regulation? Certainly, Your Honor. The regulation governing the requests to the, for example, the Department of Justice in this case, say that if such information is available, that it should be provided. It is not a mandate. And in fact, let's be clear about what the criminal division said in response to Mr. Beer's request. It didn't say, you must provide this information. We can't do the search without this information. This information is required. It simply said, your request for documents containing your name is too vague. It's not, we can't run a search. So the regulation, we contend, does not require that information. It simply says, if it's available, it should be provided. Now, in the Mandela case, the name alone was sufficient. Certainly. And yes, Your Honor, in the Mandela case, the name alone is sufficient. Contrast that with the case relied on by the district court and by the government heavily in its brief, which is the Dale case, also out of the district court in D.C. In the Dale case, the request was for documents that refer or relate to the requester. In that case, there's a subjective element to the request. The reviewer has to look at the documents and say, is there a tangential relationship? Does it tangentially relate to the individual? There's a subjective review involved. It's not simply, is the name there? Is the name not there? That's why the Shapiro court, in fact, distinguishes the Dale decision. What do you make of the exhaustion issue with respect to the criminal division? With respect to the criminal division, the exhaustion of administrative remedies? Did he exhaust? Did your client exhaust? He certainly did, Your Honor. First, he did appeal administratively to the OIP. But if we look at the actual basis for the district court's decision, the district court didn't say he didn't exhaust administrative appeals. He didn't go through the steps. The district court's conclusion was that he didn't exhaust administrative remedies because he had not provided a sufficiently specific request. And it found that because the request was not specific enough, that that constituted a failure to exhaust administrative remedies. That means the court was not satisfied that making a request under the name alone was sufficient. Certainly. And that's the first error that we contend that the district court made in this case, that concluding that a request for documents that contain a name meets the Yager requirement. Under Yager, all that must be shown is that the request is sufficiently specific to allow the reviewer to determine what's being requested. And let's be clear, volume has nothing to do with it. Is that a proper basis for the holding that it was a failure to exhaust? Yes. There have been decisions, Your Honor, that the district court doesn't rely on that conclude a failure to, in the first instance, provide a sufficiently detailed request is a failure to exhaust remedies. It's a proper basis for the decision if the factual predicate is true. But the factual predicate here, Your Honor, is not true. The request is sufficiently specific. In Yager, it must only show that the reviewer can look at the request and say, I know what I'm looking for here. I know what I need here. The substance controls, by the way, not the volume. And so beyond simply analyzing the cases that the district court cites, which we go through in our briefs and which we submit are misplaced, the government also makes additional arguments not made by the district court in an attempt to salvage the decision. The government argues first that requests for all documents, no matter what they say, no matter what the qualifier is, containing, referring, relating, if you ask for all documents, it's too broad, blanket rule. Your Honor, that's simply not the standard. Unless you have a name like John Wilson or Sally Anderson. I mean, half a million dollars. That would produce voluminous results, Your Honor. The FOIA puts the burden on the agency to respond to the individual and explain why the search is overly burdensome, if in fact it is. If the government started looking for James Beer and it started to find, and by the way, Your Honor, as Your Honor has pointed out earlier, the request also had a social security number and birth date to narrow the scope of the request. But if, for example, it only had the name and the government started running the search and said, this is crazy, we're getting hundreds of thousands of hits here, it's their burden to put forward competent proofs to reflect why the search would be overly burdensome. There's nothing in the record here about the criminal division requests to indicate why that search would be unduly burdensome, if in fact it was. And that's another argument the government makes. The only proofs put forward below in support of the criminal division request is the declaration of John Cunningham from the criminal division. And all Mr. Cunningham does is recite the procedural history of the case. Mr. Beer made the request, we responded, this is what happened. There's no analysis whatsoever of the burdensomeness of the request, if any. Where courts have affirmed that argument, Your Honor, there is record evidence of the burden. In Wolf v. CIA, for example, out of the District of D.C., the court affirmed the burdensomeness argument by the government because there was an affidavit in the record that said that the search would take 3,765 hours to complete and cost $140,000. There's no evidence in this case that the search would require any sort of burden. What kind of response did you get back from the Civil Division or the Marshals or Interpol? I'm sorry, what kind of response did you get back from the other agencies? There was responses. Other agencies ran searches, and that's a critical point, Judge Ambrose. Were they complete? Some of the other agencies did provide complete responses. But even where they weren't, take the FBI, for example, which we contend there are still issues, other agencies other than the Criminal Division have the exact same substantive request. Mr. Beer sent the request requesting all documents containing his name to a myriad of agencies. The Criminal Division, unlike many others, is the only one that didn't know how to run that search. It said this search is too big. It's not a terribly common name. I can't imagine that a name like that would have an extensive amount of records such that they can't comply. Certainly not, nor do we have any evidence in the record to the contrary. Do you have any idea what's already been disclosed? From the Criminal Division, nothing has been produced. They simply said we cannot run this search. Because of the name? Because of the nature of the request. Because at one point there was an investigation going on, but that's no longer the case. That was the FBI runner. Different response. By the way, the FBI did run the search. The FBI was able to say this is not too big. We can run this search. The Criminal Division took the position it's too ambiguous a request. Can't even run the search. And respectfully, Your Honor, it was an error to reach that conclusion based on this request. They can say that about any name then, any name at all that's submitted. Because Bayer is not a terribly common name. But, in other words, just the name alone, as far as the Criminal Division is concerned, they can't do it. It certainly appears that way, Your Honor. And we would not take the position that simply putting a name is sufficient. It's that Mr. Beer's qualifier is containing the name. Any records containing the name. If he had said, like in Dale, records that refer or relate to the name, that may be too vague or ambiguous. But it also, isn't it true that the request of the Criminal Division was not restricted to his name? It included his social and his birth date. Absolutely, Your Honor. The request of the Criminal Division also had that additional information so that if they're running the searches and that became an issue, they had a basis to verify his identity. Your Honor, it's been five years since Mr. Beer made his FOIA requests. And we respectfully submit that the time has come to direct the recipient agencies to comply with their statutory obligations. Just one final question. What initially was he trying to determine from these requests? Your Honor, my time's up. Your Honor, Mr. Beer is an incarcerated individual. The motivation for his requests likely was to review issues concerning his incarceration. Indeed, the request meant that many of the agencies involved in his investigation and incarceration. He sentenced the individual? He is a totally incarcerated drug dealer. We would submit, first and foremost, that the motivation is not relevant to the FOIA request. But even more so, it's certainly critical here for this individual. I got it. I just want to figure out what spawned all this. Thank you, Your Honor. Okay. Thank you. Mr. Simpson? Good morning, Your Honors. May it please the Court, my name is Brian Simpson, Assistant United States Attorney for the Middle District of Pennsylvania. And I represent the federal agencies in this matter. And I would like to thank Mr. Yellen for his time as a pro bono attorney. I think he's done an excellent job sharpening the issues before the Court. Thank you. And I agree. Is your argument essentially that the criminal division request we made to the criminal division didn't reasonably describe the information or was overly burdensome or what? The position, Your Honor, is it didn't comply with the regulations, not to the point that it didn't tell the criminal division what he wanted. I think he wants any document or record, really, that contains his name, birth date, and social security number. His name is almost the other end of the spectrum from Smith, B-I-E-A-R. There aren't too many people like that in the world. So what was difficult about that? Your Honor, the agency did not even get, as I understand it, the agency criminal division did not even get to evaluating whether it was unduly burdensome or whether a name could be searched, Your Honor, whether it was Smith. I just think it would have made sense to at least try and see what would come up. I mean, if they came up with a search of 10 documents versus 3,000, then I might see where they have an argument. Your Honor, I certainly understand your point. And sitting or standing here in the courtroom, I do understand that. Standing or sitting down in Washington, D.C., in a department where I'm not sure how many FOIA requests they receive. Is there a dedicated group for FOIA requests? Each agency, I believe, Your Honor, does have a specific branch or group. I believe the size varies. I can speak more competently to the executive office of the United States Attorneys than the U.S. Attorney's Office because that's where I sit, Your Honor, but I don't know that that helps the court. The letter that your office, and I'm speaking broadly, the Department of Justice wrote to Mr. Beer makes it clear that the information regarding your you must provide enough information regarding your criminal prosecution, suggesting that there's not enough information provided. Both of your clients, you have two clients here, receive the same request, and the responses are radically different. So how do you reconcile that? Your Honor, and to be fair, the criminal division is the only one out of seven or eight, which I've represented throughout this matter, who two of them took the position that they needed more information. The FBI had the same information and provided a lot of documentation. It absolutely did. The criminal division got the same request and said it was too ambiguous. It did request more additional information, Your Honor. So the individuals down there charged with receiving it, reviewed it, and requested additional information so that they would better know where to go look. They provided suggestions of information. They did specifically ask he identify which division he thought would have it, and then they also provided an address that he could contact and a phone number that he could contact should he have any discussions to follow up. The Executive Office of the U.S. Attorneys, Your Honor, and I know it's not one of the two agencies that the court is focused on today, also responded to Mr. Beer's request and said, please tell us which U.S. Attorney's Office you want us to look in. Mr. Beer responded to that and identified four agencies, or four U.S. Attorney's Offices, that then were specifically searched. Admittedly, the criminal division took a different position than the FBI, Interpol, and the Marshal Service did. They didn't really take a different position than the Executive Office of the U.S. Attorneys did. Mr. Beer took a different position. With one, he wrote and followed up and said, look in these four offices. So as a matter of law, was it a sufficiently specific enough request or not? I don't believe that it was with respect to the criminal division, Your Honor. Why not? Because he did not provide anything beyond his name and his Social Security and birth date. And that probably reduces the universal person of one. How much more specific do you need to get? Your Honor, I'm not certain with respect to how the records are kept and how somebody would interpret that request. It may be, again, reduce it to one. It may also, depending on how information is organized or a search is conducted, they may also get everybody who has a birth date that date, depending on how search terms are queried. And, again, I apologize because I don't know that that would be the case, but it is possible. You know, it certainly was sufficient enough for the FBI. They complied. They didn't seem to have any problem with it, but it was not sufficient for the criminal division. But your answer is you're not familiar with the criminal division's procedures. They did not think it complied with the Department of Justice regulations 16. I think it's 28 CFR 16. Are they in the Department of Justice? They are, Your Honor, and so is all of these entities are within the Department of Justice, absolutely. And the criminal division and the Executive Office of the U.S. Attorneys are the only two out of seven or eight, depending, I don't think a request was served on the BOP, but they got involved, who took the position that they needed more information. That's not an unreasonable position to take. Mr. Beard did comply with it. And Shapiro doesn't speak to this issue, but as the court is aware, and from the district court's briefs on it, there's a number of cases out there that says it is a failure to exhaust if the agency requests more information. And you can see our skepticism if the FBI complied and produced certain documents and said there may be more where there's no look. But the criminal division says, sorry, you didn't provide us with enough information. It really doesn't make sense. Your Honor, I appreciate the court's skepticism on that issue. The best I can do is the request is received and reviewed by different people in different agencies. Different agencies likely organize their information and search it differently. So I don't know that I'm going to have a satisfactory answer for the court. What about the mootness issue? Did the district court appropriately analyze the Vaughn Index? This is with respect to the FBI? Yeah. Your Honor, I don't believe that the district court gave the Vaughn Index any in-depth consideration. It certainly did not comment on it as it did on, I believe, the marshals. The U.S. marshals also withheld certain information and provided much smaller. Are you agreeing that the district court didn't satisfy, didn't do what it should have done with respect to the Vaughn Index and the FBI? I'm not willing to go that far, Your Honor, but I understand that because the court may well have looked at the Vaughn Index, Mr. Hardy's declaration, reviewed all 33 pages of it, looked at Mr. Beer's response, and may, could have determined that the Vaughn Index for Mr. Hardy was sufficient with the FBI. However, the court does not have that in the record. The court seems to argue that it doesn't even need to consider it for a failure to exhaust the withholding aspect, which is not a position that the government ever took in this proceeding, and it's not a position we're taking today. So what's your position today? It's incumbent on the court to review the Vaughn Index, correct? That would be the government's position. Yes, sir, to review the Vaughn Index of the declaration and not to... Excuse me, the case is finished before the district court, isn't it? Is the case finished before the district court? Yes, the district court has disposed of all issues before at this time. But the FBI is not finished with regard to Beer's request, is it? No, sir, I believe that it is. Well, wait a minute, I thought the FBI said, here is what we've got, we're going to continue looking, and we may end up giving them further information. Your Honor, that is not my understanding of it. The FBI... Well, I may be mistaken. Well, Your Honor, I may be, or you may have turned me around, which may not be a big challenge today. The FBI was splintered because at one time, after the FBI determined that the law enforcement exemption no longer applied for ongoing investigations, it then processed the information, which led to the Second Hardy Declaration, which is the explanation as to why the FBI, down below the FBI motion to dismiss, sits separate. My understanding is that prior to the Second Hardy Declaration, what they identified was the 1,200 documents, give or take, in the total universe. So as far as I know, Your Honor, I believe that they are done. Have you waived your exhaustion argument with respect to the Vaughn Index? It is certainly not one that we are making, so I... I mean, it looks like your supplemental brief on page 31 does that. Your Honor, I think that's a fair interpretation. It was never one that we intended to make. It was not one that, to be quite honest, Your Honor, it's not one I've ever made in any FOIA case. With respect to the context of the Vaughn Index, when documents are produced after the litigation has begun. Is there a specialized group of people that are tasked with defending FOIA cases for the DOJ? Each agency tends to have some that assists U.S. Attorney's Office, depending on the nature of the case, it might be handled by the Department of Justice. In the U.S. Attorney's Office for the Middle District, Your Honor, that responsibility falls to me. Thank you very much. If the court doesn't have any other questions right now, a couple of points I did want to make. With respect to the request for additional information, again, it was not an unreasonable position for a criminal division to take that he provide additional information or contact him. The name, the Social Security number, the date of birth? Other information that might help them know where to search within their 17 divisions. It's really narrowing down things quite a bit. It is, Your Honor, what they would have preferred or helped with. What about the Social Security number? What else do you need besides that? Again, Your Honor, they didn't take the position that they couldn't find information on him. They didn't argue, and we're not arguing now. If a police officer stops you on the road back to where you live, and he goes to a computer, he can find all kinds of stuff with regard to Mr. Simpson, and it's right there. Yes. So you would think that it would be just a click to find stuff with regard to Mr. Beer. I appreciate the court's position, and we are not taking a position that it is impossible to do that. The agency, the criminal division, thought it was within compliance of their regulations to ask him to provide additional information, which any number of courts have dismissed cases for failure to exhaust when somebody doesn't respond. And in most of those cases, the individual has included a name. They were looking for what type of crime he might have been charged with, investigated for. They were also looking for part of the country it would have taken place in, any other, the full case site, additional information. Also, with respect to... But wouldn't you think the information is readily available? The criminal division, if you're punching somebody's Social Security and their birth date, a world of information is available. Isn't that true? Your Honor, I do not know that. That may be true, but within the Department of Justice, we don't have readily access to many things within sort of our shops, if you will, that the local police or law enforcement would as far as records show. He was prosecuted. He's a federal prisoner. I understand that, Your Honor. So one would think that the U.S. Attorney's Office, the criminal division, would know what he was prosecuted for. I understand Your Honor's position. I can't speak intelligently to that because I am a civil AUSA, so I don't know how closely the criminal side operates with it. But it would have been helpful if they were told what district he was in. The other thing, too, Your Honor, from their positions, he was asking any place his name shows up in any file. So that is not necessarily limited to just him. I mean, it could have been any record of any other sorts, anyone else who had been under investigation or cases were open. All right. Thank you very much. Okay. The district court reached the right conclusions here and that it lacked jurisdiction over Mr. Baer's FOIA request? Well, I mean, it doesn't lack jurisdiction if there's still a live issue with regard to the Vaughn Index pertaining to the FBI. Well, Your Honor, I'm not, and again, the government's position is. . . I mean, shouldn't the court have retained jurisdiction to see, review what was filed in response? The claim is that the Vaughn Index was not sufficient, so there's a dispute.  It certainly could have done that, and I'm not sure what exactly the district court did here with respect to that because Mr. Baer did file an opposition to the government's motion to dismiss and or summary judgment with respect to the FBI specifically. And he has sort of bald assertions that the Vaughn Index is insufficient, that the FBI has historically not utilized exemptions fairly, things of that nature. What he didn't provide the court at that time, which he could have, and with the court's indulgence because I know this is not for the court, the records that were produced with redactions went to Mr. Baer. Those documents have the redaction coupled with the Hardy Declaration that has. . . I apologize, my time is up. No, you can finish your explanation. Thank you for your indulgence. It would say, if he's looking at a document and something is redacted, there will be a white line there that has a code that is referenced in Mr. Hardy's declaration, whether it is a B6, a privacy interest. But those codes are even more specific, and then they have like 1, 2, or 3, which is also in Mr. Hardy's declaration. So it tells you if it's privacy information of an FBI agent, of local law enforcement. . . That's all in that information that Mr. Baer had, and he did not challenge before the district court specifically how the Hardy Declaration, in conjunction with the documents he had, was insufficient. He was pro se at that time, right? Yes, he was, Your Honor. He was pro se. Again, he was pro se. He had no problem corresponding regularly, taking appeals to OIP in certain issues, and following his briefs. But yes, he was indeed pro se. Thank you very much for your time this morning, Your Honors. Thank you.  Your Honors, just two quick points on rebuttal. First, as to the criminal division requests, the Yager standard applies to all FOIA requests. There are not different standards for different agencies, substantively speaking. A substantive request that is good enough for one agency is substantively good enough for another. If there was something about the criminal division that made the request procedurally or technically difficult to do, it was incumbent on the criminal division to come forward with proof of that fact. They did not do so. Moreover, under this Court's Ferry decision, the criminal division had an obligation to help Mr. Beer reformulate his requests. Let me ask you something that is really entirely hypothetical. If this case were to go back to the district court and you were to represent Mr. Beer, what would be your argument for the district court? The argument for the district court would be, first and foremost, that Beer should have been granted summary judgment on his challenge to the criminal division request and that the criminal division should be directed to complete the search as phrased. As to the FBI request... Does that require summary judgment finding? Mr. Beer, certainly. The dismissal motion should have been denied and Mr. Beer's challenge should have been granted. The summary judgment should have been granted. All the summary judgment seeks is an order directing the agency to run the search. As to the FBI request, what we would argue before the district court is that the Vaughan Index is insufficient. It does not provide the historical and substantive context for the various objections. The court would need to make that analysis and that determination. That issue was still ripe before the district court and it was improper for the district court to dismiss this case while that issue was pending. Thank you very much, Your Honor. Thank you. I noticed only your name is on the brief. I'm sorry, ma'am, what is your name? Rebecca Hollander. And you were on the brief as well? I did. Okay. Again, I want to acknowledge you, Ms. Hollander, in public as well as you, Mr. Yellen, for an excellent job. I also want to thank Mr. Simpson for being with us today. It's a great honor to be here. Thank you, Your Honor. It's a privilege to be here.